OPINION OF THE COURT
Alan C. Marin, J.
Defendant argues that claimant’s motion is procedurally flawed, since it is a motion for leave to reargue under CPLR 2221 and was not made within 30 days of service with notice of entry as required by subdivision (d) (3) of CPLR 2221. CPLR 2221 covers prior orders. The dismissal here was after a trial and hence governed by CPLR 4404 (b), which provides that following a bench trial, the court, by its own initiative or in response to a motion from either party, may set aside its decision and make new findings of fact or conclusions of law.
*618 Inmate Dawes, on January 13, 2000, “assaulted a member of the Sullivan Correctional Facility Staff’ (Annucci mem, at 1, claimant’s trial exhibit 1). The next day, Mr. Dawes was sent a directive from Captain Healy which stated that “because of the pattern of violent behavior you have established against staff * * * I find it necessary to implement measures to ensure that you are not able to and/or limit your ability to assault staff.” (Healy mem, at 1, claimant’s trial exhibit 1.) What followed was an 11-item list as to the circumstances and method of the application of mechanical restraints. For example, they would be applied to Dawes during the one-hour out-of-cell exercise period and when going to and from the shower area. Item 7 provides that, “All visitation will occur in the non-contact visiting area of the Visiting Room and full mechanical restraints will remain on for the duration of the time you are out of your cell.”
No evidence was offered that any of Dawes’ violent behavior occurred during a visitation period. The withdrawal or suspension by the Department of Correctional Services (DOCS) of visitation rights for improper behavior not related thereto has been the subject of federal litigation. The Second Circuit set out the history in its majority decision denying DOCS’ request to modify a prior consent decree thereon, about which the federal appeals court stated: “visitation sanctions may not be employed to punish or discipline. Consequently, only misconduct between an inmate and a specific visitor can result in deprivation of visitation rights.” (Kozlowski v Coughlin, 871 F2d 241, 242 [2d Cir 1989].)
Rules were promulgated to implement the decree; they became part 200, entitled “Visitation,” of title 7 of the New York Codes, Rules and Regulations (7 NYCRR 200.1-200.5). Section 200.5 (a) (3) provides that contact visiting rights may be suspended for a violation of visiting rules which represent a threat to the security and order of the facility, however only if (i) contraband is passed, or attempted to be passed, between inmate and visitor, or (ii) there is unacceptable physical contact between the two.
Other extant regulations are not inconsistent with part 200. The January 14, 2000 directive restricted Dawes to noncontact visitation, but section 305.4 (e) (7) comprehends a situation in which an inmate is under restraint, but still has the right to a contact visitation with members of his family: “If an inmate is under a restraint order directing that he * * * be mechanically restrained whenever he * * * leaves the SHU [special housing *619 unit] cell * * * the inmate will remain mechanically restrained * * * except * * * when in a general population visiting room and not in a noncontact area.”[1] Section 302.2, which contains certain general provisions relating to SHU inmates, provides that “no inmate shall be deprived of the visiting privileges available to inmates in the general population,” except as otherwise provided in part 300. (7 NYCRR 302.2 [i] [1].)
If defendant’s position were well-founded, then there would have been any number of SHU prisoners denied visitation rights. As it were, at trial, Deputy Superintendent of Security Kenneth Decker could point to only one other such instance at Sullivan: “I believe there was another inmate here under similar circumstances [mentioning a name]. I’m not, you know, 100 percent sure on that as I was not here, but I believe that that’s correct.”
In view of the above, having considered the parties’ submissions,[2] it is ordered that Motion No. M-65871 be granted. It should be observed that there are any number of punishments that DOCS can mete out to inmates in order to ensure the necessary secure environment; what the consent decree and the corresponding rules mean is simply that the curtailment of visitation cannot be used to punish nonvisitation offenses.
There is scant evidence in the trial record as to the measure of claimant’s damages. Dawes testified that his contact visitation rights were suspended for six months, but offered nothing further. The only other material relating to damages that was placed in evidence was a brief reference in the Annucci memorandum to a “Visitor McIntosh” whose planned visit of January 17, 2000 did not come off (at 3, claimant’s exhibit 1). Consequently, claimant is awarded the amount of $100. The decision in this matter that was dated June 19, 2002 and filed June 28, 2002 and the judgment thereon are vacated. To the extent claimant has paid a filing fee, it may be recovered pursuant to Court of Claims Act § 11-a (2).

. Such is not necessarily inconsistent with claimant’s observation in his reply affirmation that he was not arguing that 7 NYCRR 200.5 (a) (3) requires that an inmate be uncuffed while in the general population visiting area if there was a valid security basis for doing so (fi 7).

. On the part of claimant, a notice of motion for reconsideration together with an affirmation in support and a reply affirmation in support of motion for reconsideration; by defendant, an affirmation in opposition to claimant’s motion for reargument with exhibit A.