OPINION OF THE COURT
Richard Lee Price, J.
*537 Petitioner moves this court pursuant to CPLR article 78 for vacatur of an administrative determination revoking his contact visitation privileges claiming that it was imposed without due process. Petitioner contends that the loss of such visitation, which confines the inmate to a booth precluding any physical contact with visitors via a separation barrier, is a disciplinary sanction related to his having failed a urine drug test. Petitioner further claims that the respondent denied him the right to procedural due process by failing to provide him with proper notice and a forum to challenge such determination, and that the revocation was itself arbitrary and irrational.
Respondent, the New York City Department of Correction (Department), contends that the petition is meritless and should be denied because petitioner had adequate notice that failing a drug test would result in the revocation of contact visitation privileges. Respondent further claims that any such determination was administrative, not disciplinary or punitive, and is rationally related to the legitimate interests of promoting internal prison security. After reviewing the parties’ respective papers submitted in support of these contentions, the petition is granted.
Findings of Fact
Petitioner is an inmate at a New York City correctional facility on Rikers Island. On January 11, 2008, the petitioner failed a mandatory drug test, which consisted of both an initial and confirmatory test for the presence of controlled substances. Testing positive for THC-marijuana, petitioner was served on January 16, 2008 with a report and notice of infraction charging him with violating rule 130.11 of the New York City Department of Correction Rules of Detainee Conduct.[1] At a disciplinary hearing conducted on January 18, 2008, petitioner was found guilty of this charge and a penalty of 60 days’ punitive segregation was imposed along with a $25 administrative fee.[2]
On June 15, 2008, five months after that disciplinary hearing, petitioner received a visitor and was placed in a non-physical-contact booth for the entire visit. A denial of visit report was then filed with the facility’s warden, a copy of which was placed *538 in petitioner’s file.[3] By petition dated August 1, 2008, petitioner commenced this article 78 proceeding. The responding Department filed an affirmation opposing the petition on October 22, 2008. On November 12, 2008, petitioner, by his counsel, filed a reply to the Department’s opposition and the matter was deemed submitted.
Conclusions of Law
As a general rule, prison inmates have no constitutional right to visitation (Matter of Encarnacion v Goord, 8 AD3d 850 [3d Dept 2004]). Nevertheless, as the Department’s own Directive provides, instituting visitation rights for inmates makes sense from a policy perspective in that it “encourage[s] inmates to maintain ties with their families and friends through regular visits.”[4] When, however, inmates are granted such rights by regulation, any restriction of them must then be subject to administrative and judicial review (Matter of Grigger v Goord, 27 AD3d 803 [3d Dept 2006], lv denied 7 NY3d 702 [2006]). Thus, while the Department maintains authority to revoke or limit an inmate’s visitation rights, it must first demonstrate reasonable cause to believe that such action is necessary to maintain the safety, security, and good order of a correctional facility (Matter of Serrano v Goord, 266 AD2d 661 [3d Dept 1999], lv denied 94 NY2d 762 [2000]).
Department Directive No. 2007 (Inmate Visit Procedures) § III (F) (3) (a) provides in pertinent part:
“An inmate’s right to a contact visit may be limited or denied only when it has been determined that such visits constitute a serious threat to the safety or security of a facility. Should a determination be made to limit or deny an inmate’s right to contact visits, alternative arrangements for affording the inmate the requisite number of visits shall be made, including but not limited to non-contact visits. This determination must be based on specific acts committed by the inmate while in custody under the present charge or sentence that demonstrates his/her threat to the safety and security of an institution, or on specific information received and verified that the *539 inmate plans to engage in acts during the next visit that will be a threat to the safety and security of the facility. Prior to any determination, the inmate shall be provided with written notification of the specific charges and the names and statements of the charging parties, and be afforded an opportunity to respond. At the inmates’s request, this determination shall be reviewed by the Deputy Warden for Programs every thirty (30) days” (emphasis added).
Petitioner’s argument that the Department denied him his due process rights by violating the provisions of this Directive is persuasive. As noted above, petitioner was subjected to a mandatory drug test on January 11, 2008, to detect the presence of controlled substances.[5] Five months later, after testing positive for THC-marijuana and serving his punitive segregation time, petitioner received a visitor and was placed in a non-physical-contact booth for the entire visit. Petitioner contends, and the court agrees, that the Department has proffered no relationship, causal or otherwise, between the petitioner’s positive drug test and the indefinite revocation of his contact visits. More significantly, the Department has abjectly failed to demonstrate any act of the petitioner suggesting that he poses a threat to the safety and security of the correctional institution. Where an inmate’s behavior bears no relation to his contact visits, such visits may be neither revoked nor limited (Dawes v State of New York, 194 Misc 2d 617 [2003]). Quoting Kozlowski v Coughlin (871 F2d 241, 242 [2d Cir 1989]), the court stated that “visitation sanctions may not be employed to punish or discipline . . . [0]nly misconduct between an inmate and a specific visitor can result in deprivation of visitation rights.” (Dawes at 618.) It is especially interesting to note that while the revocation of contact visits in Dawes was based on the inmate’s violent behavior, there was no demonstrable relationship between that behavior and the contact visits. As such, the revocation of contact visits was held to be improper. Surely then, where the inmate’s behavior was entirely nonviolent, e.g., drug use, and had no relationship to any contact visits, revocation of contact visits is improper.
Simply stated, notwithstanding the Department’s assertions that testing positive for the use of controlled substances, by itself, justifies revocation of petitioner’s contact visit privileges, *540 it has failed to establish any basis, reasonable or otherwise, to believe that such action is necessary to maintain safety, security, and good order of the correctional facility. In fact, the Department has failed to show the existence of any “specific acts committed by the inmate . . . that demonstrate[ ] his/her threat to the safety and security of an institution.” (Department Directive No. 2007 [Inmate Visit Procedures] § III [F] [3] [a].) The Department similarly failed to provide any information, specific or otherwise, that petitioner planned to engage in acts during the next visit that would be a threat to the safety and security of the facility.
Petitioner further claims that although a disciplinary hearing was conducted relative to having been charged with violating Rules of Detainee Conduct rule 130.11 for testing positive, no such hearing was conducted regarding the revocation of his contact visits, as required pursuant to Department Directive No. 2007 [Inmate Visit Procedures] § III (F) (3) (a). In fact, even according to the papers submitted by the respondent Department, petitioner was unaware of the revocation until June 16, 2008, one day after his June 15, 2008 visit, when he was restricted to a booth visit.
Regarding notice, the Department must provide the inmate with written notice of a disciplinary action and allow for appeal of such action. Rule 1-04 (a) (1) of the Inmate Rulebook[6] states that when an inmate is placed against their will in “any of the most restrictive security categories, including punitive segregation,” the inmate will be given written notice of (i) the reasons for the designation, (ii) the evidence relied upon, (iii) the right to a hearing before an impartial adjudication captain appointed from the adjudication unit, and (iv) the inmate’s rights at the hearing. Clearly, the only notice and hearing petitioner was afforded related to his failed drug test. There is no evidence, however, that petitioner was provided with any such notice of the Department’s determination to revoke his contact visits.
The Department’s claim that as a general matter, petitioner should have been aware that testing positive for controlled substances could result in such a determination because it is stated in the Inmate Handbook and on signs posted in the facility, and since he was previously incarcerated on several occasions, is irrelevant and entirely without merit. As noted, the Department *541 certainly has a duty to maintain the security of the facility, and the court does not question the legitimacy of the need to suspend contact visits to achieve that end. It must, however, adhere to the proper protocol of providing inmates with notice and an opportunity to respond before instituting such action. Department Directive No. 2007 [Inmate Visit Procedures] § III (F) (3) (a) provides that “[p]rior to any determination, the inmate shall be provided with written notification of the specific charges and the names and statements of the charging parties, and be afforded with an opportunity to respond.” Whether an inmate is generally aware that visitation privileges may be revoked or restricted as a consequence of testing positive in no way serves as a substitute for notice and an opportunity to be heard given when the Department specifically intends to do so.
Finally, the Department’s assertion that it had no obligation to notify petitioner of its determination revoking his contact visit privileges until he actually received a visitor is beyond a cavil and wholly unreasonable. Also unreasonable is the Department’s claim that petitioner was not entitled to notice of its determination or a hearing because it was merely an administrative decision, not a punitive measure. Given that the Department utterly failed to establish even a remote connection between petitioner’s positive drug test and any contact visits, along with its complete failure to demonstrate that his testing positive would be a threat to the safety and security of the facility in future visits, the revocation of petitioner’s contact visit privileges was nothing other than arbitrary and capricious thereby depriving him of due process. The petition is therefore sustained in all respects and the court orders that petitioner’s full visitation privileges be restored.

. See report and notice of infraction (attached to respondent’s affirmation in opposition as exhibit 4).

. See hearing report and notice of disciplinary disposition (attached to respondent’s affirmation in opposition as exhibit 4).

. See denial of visit report (attached to respondent’s affirmation in opposition as exhibit 9).

. See Department of Correction Directive No. 2007 (Inmate Visit Procedures) § II (A) (attached to respondent’s affirmation in opposition as exhibit 7).

. See Department of Correction Directive No. 4535 (Inmate Drug Testing) (attached to respondent’s affirmation in opposition as exhibit 6).

. See Department of Correction Inmate Rulebook rule 1-04 (a) (1) (attached to respondent’s affirmation in opposition as exhibit 3).